***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted June 28, affirmed July 19, 2023

In the Matter of E. J. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. L. H.,
*Appellant.*

Jackson County Circuit Court
21JU02362; A180489 (Control)

In the Matter of R. J. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. L. H.,
*Appellant.*

Jackson County Circuit Court
21JU02363; A180490

In the Matter of G. L. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. L. H.,
*Appellant.*

Jackson County Circuit Court
21JU02366; A180492

In the Matter of J. C. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. L. H.,
*Appellant.*

Jackson County Circuit Court
21JU02368; A180493

Charles G. Kochlacs, Judge.

Kristen G. Williams filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Mother appeals from a judgment terminating her parental rights to her four children, R, E, G, and J. In four assignments of error, mother argues that the juvenile court erred in concluding that mother was an unfit parent, that termination of mother's parental rights was in the children's best interests, and that mother neglected R and E. We conclude that the Department of Human Services (DHS) established by clear and convincing evidence that mother is unfit and that termination is in the children's best interests. Accordingly, we affirm.[1]

On a *de novo* review of a judgment terminating parental rights, we must determine for ourselves whether the evidence is clear and convincing that mother's parental rights should be terminated, and we give "considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony." *Dept. of Human Services v. R. K.*, 271 Or App 83, 89, 351 P3d 68 (2015).

A detailed recitation of the facts would not benefit the bench, bar, or public.

To terminate a parent's rights due to unfitness, we must find that the state proved by clear and convincing evidence that a parent is "unfit by reason of conduct or condition seriously detrimental to the child or ward" and "integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change." ORS 419B.504; *State ex rel Dept. of Human Services v. A. M. P.*, 212 Or App 94, 104, 157 P3d 283 (2007). We conclude that clear and convincing evidence exists that mother is unfit. First, mother's conduct was seriously detrimental to her four children, as evidenced by their

---

[1] Because the state proved by clear and convincing evidence that mother was unfit and that termination was in the children's best interests, we do not need to determine whether mother neglected R and E. *See Dept. of Human Services v. B. J. B.*, 242 Or App 534, 536, 256 P3d 167 (2011) ("[I]f the state proves by clear and convincing evidence any of the allegations in a petition to terminate a person's parental rights, termination is required. It has been this court's practice to affirm, either with or without a written opinion, a juvenile court's judgment of termination if there is any basis to do so.").

own testimony and testimony from experts who evaluated them. Second, mother's failure to accept any responsibility for the bases for DHS's involvement, and mother's failure to make any progress in ameliorating her mental health condition, provide clear and convincing evidence that the children cannot be returned within a reasonable time.

In deciding whether termination is in the children's best interests, we recognize that "even when a parent is unfit and reunification within a reasonable time is improbable, it may not be in a child's best interest to terminate parental rights." *Dept. of Human Services v. T. M. D.*, 365 Or 143, 158, 442 P3d 1100 (2019). The best-interests inquiry focuses on the needs of the child and considers the unique circumstances of each case. *Id.* at 166. "Facts that demonstrate the parent's unfitness also may demonstrate that it is in the child's best interest that the parent have no further relationship with the child." *Id.* at 162. To terminate, the court must conclude that "the legal benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022). Additional considerations include "(1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm to the child posed by termination." *Id.*

Having considered the evidentiary record, we conclude that clear and convincing evidence exists that termination is in the best interests of all four children. The resource parents—the children's older brother and his wife—testified that they want to adopt the children. They have cared for the children exceptionally well since the day the children were removed from mother's home, and the children have thrived in their care.

While mother argues that a permanent guardianship with the foster parents, rather than adoption, would be sufficient for the children's permanency needs, the resource parents presented concerns regarding mother's understanding of boundaries with the children, and thus preferred

adoption over permanent guardianship. *See Dept. of Human Services v. J. S. E. S.*, 315 Or App 242, 245, 501 P3d 556 (2021) (holding that the relationship between the mother and foster parents made a permanent guardianship difficult to maintain because the "mother [was] not on good terms" with the foster parents, and the foster parents had "valid concerns that [the mother would] not respect their boundaries").

We are convinced that the benefits to the children of ending the legal relationship with mother outweigh the risk of harm posed to the children by severing that legal relationship.

Affirmed.